707 P.2d 1174

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Gary D. JOHNSON,
Defendant-Appellant.**

**No. 7736.**

Court of Appeals of New Mexico.

July 16, 1985.

Certiorari Quashed Oct. 1, 1985.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Anthony Tupler, Ass't Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

On rehearing, the previous opinion is withdrawn and the following is substituted.

The jury found defendant guilty of four counts of attempted first degree depraved mind murder of Ms. Parker, her two children, and a babysitter; two counts of attempted second degree murder of Cauffman and Shannon; and negligent arson. From the judgment and sentences entered on the verdicts, defendant appeals, raising the following three issues:

1. Whether defendant's right to due process was violated when the jury was instructed on negligent arson, although the state's charge against him specified willful and malicious arson.

2. Whether a single act involving multiple victims can give rise to multiple convictions and sentences or whether the bar against double jeopardy prohibits that result.

3. Whether the court's refusal to give defendant's tendered mistake of fact instruction denied defendant's right to present a defense.

Other issues listed in the docketing statement, but not briefed, are abandoned. *State v. McGuinty,* 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982).

Although not raised below or on appeal, because of probable fundamental or jurisdictional error, this court raised sua sponte the question of whether a crime exists for attempted first degree "depraved mind" murder, for which defendant was convicted of four counts, or, under the facts of this case, for attempted second degree murder, for which defendant was convicted of two counts. NMSA 1978, § 30–2–1(A)(3) and (B) (Repl.Pamp.1984). We requested the parties to brief the issue and, assuming no crime exists, to also brief the questions of whether defendant's convictions for these crimes constitute fundamental or jurisdictional error, and how a holding of no crime would affect our disposition. The parties have filed supplemental briefs in compliance with our direction, and we now hold that no crime exists for attempted depraved mind murder or for attempted second degree murder of Cauffman and Shannon of the unintentional variety. As to the negligent arson conviction, we also reverse. We remand for new trial of the offense of attempted second degree murder of the intentional variety as to all victims, if the trial court determines the evidence so warrants.

**FACTS**

On May 10, 1983, a fire bomb was thrown into a mobile home occupied by Carolyn Sue Parker, her two children, a live-in babysitter, and two male friends of Ms. Parker, Mr. Cauffman and Mr. Shannon. All were asleep. The occupants managed to extinguish the fire before the fire fighters and police arrived. No one was injured. While talking to the police, Ms. Parker received a telephone call. According to Ms. Parker, the voice, whom she identified as being that of defendant, said,

"I missed you this time, bitch, but I'll get you next time."

Defendant, his wife, and Ray Wells, also charged as a result of the incidents, had lived in the Parker mobile home up to a week before the incident, but, according to Ms. Parker, had been "kicked out" for not paying their expenses. Defendant knew that Ms. Parker, her children, and the babysitter would likely be in the mobile home when the fire bomb was thrown, but he did not know that the two male friends would be there.

While the evidence reflected that Ray Wells actually threw the fire bomb, the evidence linked defendant as an accomplice to the act and the jury, by its verdict, found that defendant helped, encouraged, or caused the crimes to be committed.

**DISCUSSION**

**1. *The attempted murder convictions.***

Under this point, we discuss: (a) whether a crime exists for attempted depraved mind murder, and hold it does not; (b) whether the state in this case can refile on attempted first degree murder of the deliberate variety without violating defendant's right against double jeopardy; (c) whether a crime exists for attempted second degree murder, and hold it does not for the unintentional variety but may for the intentional variety; (d) whether the case can be remanded for new trial of the latter, and as to which victims; and, finally, (e) the authority for raising the issues herein discussed.

■ (a) To convict for attempted depraved mind murder of the mother, children, and babysitter requires that defendant intended to commit an unintended killing, a logical impossibility.

■ The crime of attempt to commit a felony "consists of an overt act in furtherance of and *with intent to commit a felony* and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (Repl.Pamp.1984) (emphasis added); NMSA 1978, UJI Crim. 28.10 (Repl.Pamp.1982). The crime of attempt to commit a felony is a specific intent crime. *State v. Grayson,*

50 N.M. 147, 172 P.2d 1019 (1946); *State v. Foster*, 87 N.M. 155, 530 P.2d 949 (Ct.App. 1974).

 In comparison, the underlying crime of depraved mind murder does not require specific intent to kill. Indeed, it expressly excludes a specific intent to kill a specific person. Depraved mind murder "is the killing of one human being * * * by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." Section 30–2–1(A)(3); NMSA 1978, UJI Crim. 2.05 (Repl.Pamp. 1982). Such condemned behavior is required to be extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness: for example, shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo. *People v. France*, 57 A.D.2d 432, 394 N.Y.S.2d 891 (1977). *See also Randolph v. State*, 83 Wis.2d 630, 266 N.W.2d 334 (1978) (to constitute a depraved mind, more than a high degree of negligence or recklessness must exist). It covers the type of situation in which one acts with outrageous recklessness and that recklessness results in one or more deaths. *See State v. Weso*, 60 Wis.2d 404, 210 N.W.2d 442 (1973). Even if the perpetrator had no specific intent to kill anyone, he would be guilty of depraved mind murder in the event someone died as a result of his actions, because he acted in a manner greatly dangerous to others. *See State v. Sena*, 99 N.M. 272, 657 P.2d 128 (1983). The defendant must know his act is greatly dangerous to the lives of others. *See State v. Omar-Muhammad*, 102 N.M. 274, 694 P.2d 922 (1985); *State v. McCrary*, 100 N.M. 671, 675 P.2d 120 (1984).

Thus, in order to convict for attempted depraved mind murder the jury would have to find defendant intended to perpetrate an unintentional killing. The impossibility of this result is discussed in *Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171 (1983), where the court said:

The question squarely presented to us is whether someone can attempt to commit [depraved mind murder]. We think not. A person commits an attempt when, *with intent to commit a specific crime,* he does any act which constitutes a substantial step toward the commission of that crime. * * * [Depraved mind murder] occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an attempt to commit [depraved mind murder] would seem to require proof that a defendant *intended* to perpetrate an *unintentional* killing—which is logically impossible. While a person who only intends to commit a felony may be guilty of [depraved mind murder] if a killing results, and a person who only intends to inflict bodily harm may be guilty of [depraved mind murder] if a killing results; it does not follow that those persons would be guilty of *attempted* murder if a killing did not occur. They would not be guilty of attempted murder because they did not *intend* to commit murder—they only intended to commit a felony or to commit bodily harm.

LaFave and Scott have explained in their treatise on criminal law why it is necessary to prove an intent to kill in order to sustain a charge of attempted murder:

Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime

of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.*, the death of another).

LaFave and Scott, *Handbook on Criminal Law*, § 59 at 428–29 (1972) (footnotes omitted).

456 A.2d at 177 (emphasis in original). *See also People v. Hernandez*, 44 Colo.App. 161, 614 P.2d 900 (1980); *Merritt v. Commonwealth*, 164 Va. 653, 180 S.E. 395 (1935); *Thacker v. Commonwealth*, 134 Va. 767, 114 S.E. 504 (1922); Smith, *Two Problems in Criminal Attempts*, 70 Harv. L.Rev. 422 (1957); Smith, *Two Problems in Criminal Attempts Re-Examined—I*, 1962 Crim.L.Rev. 135; Stuart, *Mens Rea, Negligence and Attempts*, 1968 Crim.L.Rev. 647.

In New Mexico, specific intent is the intent to do a further act or achieve a further consequence. M. Thompson, *Addendum 1. The Lazy Lawyer's Guide to Criminal Intent in New Mexico;* NMSA 1978, Judicial Pamphlet 19, at 275 (Repl. Pamp.1982). The specific intent for attempt is the intent to commit the crime attempted. UJI Crim. 28.10. A defendant charged with attempted depraved mind murder would have to have the specific intent to commit depraved mind murder. Yet, depraved mind murder is defined primarily by its consequences—a killing resulting from defendant's outrageous acts regardless of his intent. Thus, specific intent concerns itself with the state of mind of the perpetrator, while an unintentional killing classified as depraved mind murder concerns itself with the consequences.

We, therefore, hold that the crime of attempted depraved mind murder, for which defendant was convicted, does not exist and those convictions must be reversed.

Does this holding conflict with the recent opinion of this court in *State v. Gillette*, 102 N.M. 695, 699 P.2d 626 (Ct.App.1985), in which we upheld a conviction of attempted murder of two individuals who tasted a poisoned Dr. Pepper anonymously delivered to a third individual, the intended vic-tim? In *Gillette* defendant was convicted of attempted first degree murder of the willful, deliberate, and premeditated variety, Section 30–2–1(A)(1), which requires a deliberate intent, analogous to specific intent. His specific intent was to kill the intended victim. His conviction as to the two other individuals was upheld based on the doctrine of transferred intent. Gillette's specific intent to kill his intended victim was transferred to the intended victim's two co-workers, who sipped from the poisoned Dr. Pepper. In the case before us the state filed an information against defendant on six counts under an open charge of attempted murder, but chose to proceed on attempted depraved mind murder. The jury was so instructed. Had the state instead proceeded on attempted deliberate murder as to Ms. Parker and the other occupants of the mobile home, the rule of *Gillette* would apply. This did not happen. Thus, *Gillette* is different and our holding does not conflict with that case.

**(b)** Can the state now proceed on attempted first degree murder of the deliberate variety, as in *Gillette*, without violating defendant's constitutional guarantee against being placed twice in jeopardy for the same crime? We hold it cannot.

 Defendant was charged with attempted murder under an open charge, which is a proper charge in this state, and upon which the state could seek to convict him on any theory of attempted first degree murder or lesser included offenses. *State v. Roy*, 40 N.M. 397, 60 P.2d 646 (1936); *State v. King*, 90 N.M. 377, 563 P.2d 1170 (Ct.App.1977), *overruled on other grounds, State v. Reynolds*, 98 N.M. 527, 650 P.2d 811 (1982). Being a proper charge, jurisdiction was conferred on the court. *Cf. State v. Mabrey*, 88 N.M. 227, 539 P.2d 617 (Ct.App.1975). When the jury was impaneled and sworn to try the case, jeopardy attached on the charge. *State v. Rhodes*, 76 N.M. 177, 413 P.2d 214 (1966). Once that happens, defendant is entitled to a verdict of either a conviction or acquittal on the charge unless he seeks to abort the trial, *See State v. Day*, 94 N.M. 753, 617

P.2d 142, *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980), or unless the trial is aborted for reasons amounting to a manifest necessity. *See State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146 (1977), *overruled on other grounds, State v. Wardlow,* 95 N.M. 585, 624 P.2d 527 (1981); *State v. Sedillo,* 88 N.M. 240, 539 P.2d 630 (Ct.App.1975).

■ Under this line of cases, defendant was put in jeopardy on a charge of attempted open murder. On all theories except the ones on which the jury was instructed, the trial aborted without manifest necessity because the state simply chose not to proceed on those theories, although defendant was in jeopardy as to them. Thus, double jeopardy would preclude a retrial on the attempt to commit first degree murder.

■ **(c)** We have held that, due to the inherent conflict between the elements of attempt and depraved mind murder, there could be no such crime as attempted depraved mind murder. The elements of second degree murder are somewhat similar to depraved mind murder. *See McCrary.* Depraved mind murder requires subjective knowledge that one's act is greatly dangerous to the lives of others. Second degree murder requires objective knowledge that one's acts create a strong probability of death or great bodily harm. *McCrary. But see State v. Beach,* 102 N.M. 642, 699 P.2d 115 (1985). (Notwithstanding the language in *Beach,* we do not believe the supreme court intended to make the elements of second degree murder and depraved mind murder identical.)

■ In spite of the similarity between depraved mind murder and second degree murder, we believe that attempted second degree murder may still be a crime under the circumstances of this case. Cases of intentional murder are not necessarily excluded from second degree murder. *See State v. Aragon,* 85 N.M. 401, 512 P.2d 974 (Ct.App.1973). The fact that the legislature, in 1980, amended the murder statute to require only the elements of a killing in the performance of an act which the defendant knows creates the requisite probability, Section 30–2–1(B), does not mean that intentional killings are excluded. To the contrary, an intentional killing would always include these elements. The reason that depraved mind murder excludes intentional killings while second degree murder does not is one of statutory construction. First degree murder has three alternate definitions: deliberate, felony, and depraved mind. Section 30–2–1(A). Second degree murder contains only one definition. Section 30–2–1(B). Because there is a separate definition for deliberate, i.e., intentional, murders under subsection A, it must be presumed that the legislature meant something different in enacting a separate definition for depraved mind murder. However, second degree murder has only one definition, thereby not excluding intentional from its definition. Thus, it follows that where the second degree murder is of the unintentional variety, there can be no attempt to commit that type crime for the same reasons discussed above as to attempted depraved mind murder, but where it is of the intentional variety, the crime of attempt to commit does exist.

**(d)** How do these concepts apply to this case? As we have stated, while second degree murder can be committed without a specific intent, all cases of intentional killing are not necessarily excluded from second degree murder. For example, a perpetrator could conceivably commit attempted second degree murder if he intended to kill someone, and did an act placing the person in danger, but the person did not die. If defendant fire bombed the mobile home, intending to kill someone inside but knowing that his act created the requisite probability with respect to others, it follows that this could constitute sufficient evidence to convict him of attempted second degree murder as to the others. *See Gillette.* In this case, then, as to all victims, we remand for a trial on attempted second degree murder. The determination of the weight and effect of the evidence are matters reserved for the trial court. *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975). A proper instruc-

tion on attempt together with NMSA 1978, UJI 2.11 (Repl.Pamp.1982) will adequately instruct the jury as to intent.

 The record reflects that the jury was instructed as to attempted second degree murder. Defendant having been convicted of attempted first degree murder and attempted second degree murder under general instructions, he would not be placed twice in jeopardy by a remand for a new trial on the lesser or equal attempted second degree murder. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Vigil.* Although defendant has been convicted of attempted second degree murder of two counts under correct instructions which he requested, we are not convinced that confusion did not arise due to the instructions on attempted first degree murder. Consequently, we remand for new trial to correct fundamental error. *See State v. Buhr*, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971).

 (e) At the outset, we said that probable jurisdiction or fundamental error had been noted and we asked counsel to brief the question of whether this court has the duty to raise the issue, although not raised below or on appeal. The state, in its supplemental brief, agrees that we can and should raise the issue. We quote from the state's brief: "A conviction for a non-existent [sic] crime should not stand simply because not raised by either of the parties. This would allow fundamental error to go uncorrected." We agree. *See* NMSA 1978, Crim.,̤ Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983); *State v. Mabrey.* Thus, the questions of whether a crime exists for attempted depraved mind murder and whether attempted second degree murder was proved, as applied to the facts of this case, could be raised for the first time on appeal, and this court had a responsibility to raise them.

We summarize our holding under this point. Because of fundamental error, this court, on its own, raised the issue as to whether a crime exists for attempted depraved mind murder and attempted second degree murder of the unintentional variety.

For the reasons set forth, we hold no crime exists. We further hold that under the facts of a case, attempted second degree murder of the intentional variety may exist. Double jeopardy does not apply where remand is for retrial on the lesser or equal attempted second degree murder charges. We, therefore, remand for new trial on the charge of attempted second degree murder of all occupants of the trailer.

**2. *The due process argument as to negligent arson.***

In addition to the open charge of attempted murder, defendant was charged with one count of malicious or willful arson. NMSA 1978, § 30–17–5(A) (Repl. Pamp.1984). Defendant claims he was denied due process and adequate notice when the trial court, after directing a verdict as to the malicious or willful arson charge, submitted a negligent arson instruction to the jury. Section 30–17–5(B). Defendant argues that "recklessness," an element of negligent arson, Section 30–17–5(B), differs from the elements to convict for malicious and willful arson under Section 30–17–5(A). Defendant points out that the states of mind necessary to establish the two offenses differ and that negligent arson is not necessarily a lesser included offense of malicious and willful arson.

 The state concedes this point and we agree. A defendant in a criminal case is entitled to know what he is being charged with and to be tried solely on those charges. *State v. Crump*, 82 N.M. 487, 484 P.2d 329 (1971). It is improper to instruct the jury as to a crime not formally charged if that crime is not a lesser included offense of the crime formally charged. *State v. Patterson*, 90 N.M. 735, 568 P.2d 261 (Ct.App.1977). That determination requires consideration of the specific elements of each offense in light of the facts. *State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074 (Ct.App.1984). In the case before us, the evidence would not support negligent or reckless arson.

 Since defendant had no notice that he would be expected to defend against

negligent arson, that conviction must be reversed.

Because we remand for new trial on the issue of attempted second degree murder of Ms. Parker, her two children, and the babysitter, we address defendant's remaining two points.

### 3. *The double jeopardy issue.*

Defendant argues that the constitutional bar against double jeopardy requires the merger of the six counts of attempted murder into one, since each charge resulted from the same, single act of placing the incendiary device in the mobile home. Notwithstanding our disposition of the convictions on these counts, the issue of merger could on remand still be argued as to the four counts of attempted second degree murder.

Defendant says that the application of the merger doctrine in New Mexico "is not altogether clear." The state seems to agree, pointing out that the single-act-multiple-victim situation "has resulted in what might be considered conflicting viewpoints." Both sides cite to *State v. Boeglin,* 90 N.M. 93, 559 P.2d 1220 (Ct.App. 1977), which relies on policy to hold that the taking of five pistols as part of the same act constituted only one larceny. They also refer to *State v. Cuevas,* 94 N.M. 792, 617 P.2d 1307 (1980), in which the supreme court held that the defendant's three convictions of contributing should have been merged into one. But in *State v. Smith,* 94 N.M. 379, 610 P.2d 1208 (1980), decided the same year as *Cuevas,* the supreme court let stand convictions for four counts of trafficking with intent to distribute narcotic drugs, all resulting from one sale.

 The constitutional provisions on double jeopardy prohibit putting a person twice in jeopardy for the "same offense." Before *State v. Tanton,* 88 N.M. 333, 540 P.2d 813 (1975) (*Tanton II*), courts in New Mexico had used various approaches to determine whether the same offense was involved in a particular case. The result was the creation of several rules, each applying to a different situation. *State v. Tanton,*

88 N.M. 5, 536 P.2d 269 (Ct.App.1975) (*Tanton I*); *State v. Medina,* 87 N.M. 394, 534 P.2d 486 (Ct.App.1975).

In *Tanton II,* the supreme court limited its review of a double jeopardy claim to three constitutional doctrines: collateral estoppel, necessarily included offenses, and the "same offense" rule. Holding that the doctrines of collateral estoppel and lesser included offenses did not apply to the particular case, the court then went on to approve and apply the "same offense" or "same evidence" test, i.e., whether the facts offered in support of one offense would sustain a conviction of the other.

The supreme court reversed this court's decision in *Tanton I,* holding that the facts offered to support a conviction for driving while under the influence of intoxicating liquors would not necessarily sustain a conviction for homicide by vehicle. *Tanton II.* In delineating the application of double jeopardy, the court stated:

> The double jeopardy clause only comes to the aid of defendants subjected to multiple prosecutions for the identical offense, or in such situations in which collateral estoppel, the concept of lesser included offenses or the same evidence test apply. By "piecemeal prosecutions" in *Tijerina* [86 N.M. 31, 519 P.2d 127 (1973)] we referred to multiple prosecutions to which the double jeopardy clause did not apply. Thus, we intended a statement of judicial policy rather than a rule of law.

*Tanton II,* 88 N.M. at 336, 540 P.2d 813 (footnote omitted).

 What did the supreme court mean when it said "multiple prosecutions to which the double jeopardy clause did not apply"? We believe the supreme court intended that where the principles of collateral estoppel and necessarily included offenses do not apply, and where the facts offered in support of one offense would *not* sustain a conviction of the other (same evidence test) in a multiple prosecution case, no double jeopardy problem exists. Thus, in this situation, a policy approach is

applicable where the limited definition of double jeopardy in *Tanton II* is inapplicable. *See State v. Boeglin.* The case law which followed *Tanton II* appears to accord with this analysis.

In *Boeglin,* the next case following *Tanton II,* the defendant was charged with five counts of larceny where he had allegedly stolen five pistols from the same owner and from the same store on the same date. This court, in holding that the defendant could be prosecuted for only one larceny, followed *Tanton II* wherein the meaning of "same offense" was considered in relation to the prohibition against double jeopardy. In both *Tanton II* and *Boeglin,* the court looked to policy in deciding whether to merge the charges or prosecute them separately.

*Boeglin* noted that *Tanton II* limited the meaning of double jeopardy to identical offenses or situations where collateral estoppel, the concept of lesser included offenses, or the same evidence test applied. However, the court further noted that *Tanton II* did not reject the use of policy in resolving questions of multiple prosecutions; rather, it affirmed the use of judicial policy to prevent piecemeal prosecutions and stated that the policy approach was applicable to situations in which the limited definition of double jeopardy in *Tanton II* was inapplicable. The doctrines of collateral estoppel and lesser included offenses were not applicable in *Boeglin.* Because each larceny count in that case required proof of a different pistol, the same evidence test was inapplicable; the use of policy in that case was proper.

In the next case, *State v. Smith,* the supreme court reaffirmed its reliance upon judicial policy in resolving questions not involving the constitutional prohibition against double jeopardy, i.e., when multiple acts cannot be classified under the same evidence test, they may nevertheless be divided into multiple counts if some applicable policy so demands.

The defendant in *Smith* was charged with four different counts of trafficking in drugs. The four counts stemmed from one sale and each count was for a different drug. The facts offered in support of one of the counts would have sustained a conviction of all other counts, except that each of the counts charged involved a different drug; therefore, there being no double jeopardy problem since the "same evidence" rule did not bar prosecution on each count, the court in *Smith* applied the policy that the charges be prosecuted separately in order to prevent a trafficker from offering a wider variety of drugs at a single sale. This result was also held to be consistent with the intent of the drug laws.

Following *Smith,* and decided the same year, the supreme court in *State v. Cuevas* held that the same policy considerations in *Boeglin* which prevented five different prosecutions of larceny for a theft involving five guns (piecemeal prosecutions), required that three counts of contributing to the delinquency of three minors be merged into one count. The supreme court could not apply the "same offense" or "same evidence" test since different facts, different minors, needed to be proved to support each count.

The latest case which discusses double jeopardy is *State v. Edwards,* 102 N.M. 413, 696 P.2d 1006 (Ct.App.1984). Although this case was decided largely on legislative intent, it falls in line with recent double jeopardy decisions. In *Edwards,* the defendant was convicted of five counts of practicing law without a license. The counts were based upon the filing of five different pleadings on different dates but in the same action. The concepts of collateral estoppel and lesser included offenses did not apply. Each count charged involved a different pleading and, since the question turned on the intent of the legislature, the "same evidence" test, although inapplicable, would have been considered merely an aid in determining legislative intent. After holding that the legislature intended that there be only one prosecution for the several violations, the court could find no policy consideration which argued for making the defendant liable for five separate convictions under the facts.

Overall, *Edwards* falls within the spirit of recent New Mexico case law.

■ In the present case, collateral estoppel and the concept of lesser included offenses are not involved. Because different potential victims were involved, the same evidence rule would not apply. No double jeopardy problem exists; therefore, reliance on judicial policy is proper. *See Smith.* Relying on judicial policy, we hold that the act of fire bombing a residence occupied by six people may be divided into multiple counts. We agree with the state that where there is but a single violent act and multiple victims, the societal harm is greater. And, thus, the greater the harm, the greater the need to deter such conduct. To hold otherwise would encourage single-act-multiple-victim type crimes. If judicial policy may be relied on to discourage "one-stop shopping" for drugs, it also may be relied on to discourage single act killings or attempted killings of humans. That defendant did not succeed in his attempt to kill the occupants of the mobile home is simply fortuitous. As stated by Justice Traynor in *Neal v. State,* 55 Cal.2d 11, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844 (1960), "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person."

The result we reach accords not only with the holdings of the supreme court which we have discussed, but also with the majority of other jurisdictions. *See, e.g., State v. Irvin,* 603 S.W.2d 121 (Tenn.1980); *Neal v. State; Vigil v. State,* 563 P.2d 1344 (Wyo.1977); Annot., 8 A.L.R.4th 960 (1981).

We caution that our holding does not suggest there need be successive punishments in every case involving multiple victims, that being a matter addressed to the sentencing authority under the facts and circumstances of the case. *Irvin.*

4. **The mistake of fact instruction.**

Although defendant did not take the stand, he introduced through Lt. Wheeler a handwritten statement defendant had made to a police arson investigator, which was read to the jury. It said that defendant had filled a Prestone antifreeze jug with gasoline for Ray Wells to use in his car the next morning. When defendant took Wells home, Wells began to talk about burning Carol Parker's trailer. Defendant did not take Wells seriously and said he, Wells, should go home. Defendant left the area and saw the fire sometime later.

Based on this evidence, defendant tendered a mistake of fact instruction. NMSA 1978, UJI Crim. 41.15 (Repl.Pamp.1982). The trial court refused to give the instruction on the basis it was not supported by the evidence. Because criminal intent must be present in order to convict, defendant argues that his belief, that the gasoline would be used for proper purposes or that Mr. Wells did not actually intend to use the gasoline to fire bomb the mobile home, was sufficient to make his action lawful.

Defendant's tendered instruction presented the mistake of fact defense on the basis that he "omitted to act" rather than he "acted" under an honest and honorable belief that Ray Wells did not intend to carry out the threat. *See* UJI Crim. 41.15 note 2. In what way did defendant fail to act? He does not tell us. The state's case was predicated on defendant's actively aiding and abetting in the crime, not his omission to act.

■ To preserve error defendant must tender a correct statement of the law. NMSA 1978, Crim.P.R. 41(d) (Repl.Pamp. 1980); *State v. Garcia,* 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983). Defendant's tendered instruction did not correctly state the law applicable to the evidence. The trial court did not err in refusing the tendered instruction.

**CONCLUSION**

The judgment and convictions for attempted first degree depraved mind murder and negligent arson are reversed. The judgment and convictions for attempted second degree murder are set aside and the case is remanded for new trial on attempt-

ed second degree murder of all occupants of the trailer in accordance with this opinion.

**IT IS SO ORDERED.**

DONNELLY, C.J., and MINZNER, J., concur.