This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37601**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RIGOBERTO MARIN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Rigoberto Marin appeals from his conviction following a bench trial of attempted sexual exploitation of children (manufacturing), contrary to NMSA 1978, Section 30-6A-3(D) (2007, amended 2016)[1] and NMSA 1978, Section 30-28-1 (1963),

---

[1] In 2016, Section 30-6A-3 was amended, and the crime of manufacture of child pornography was recompiled at Section 30-6A-3(E). However, the language defining the crime of manufacture of child pornography remained unchanged.

commonly referred to as attempted manufacture of child pornography. Defendant challenges the sufficiency of the evidence supporting his conviction. We affirm.

**BACKGROUND**

**{2}**     At the time of the events relevant to this appeal, Defendant was living in Hobbs, New Mexico, in a home he shared with his parents and his seventeen-year-old sister. While Defendant's sister was using the home's only bathroom, she found a hook placed directly in front of the toilet on a shelf that was about two feet off the floor. Defendant's sister found the hook's location odd because it was obviously out of place, and she brought it to her mother's attention.

**{3}**     Officer Matthew Burleson with the Hobbs Police Department responded to Defendant's parents' home in response to a report about the hook shortly after midnight on March 16, 2014.[2] When Officer Burleson arrived at the home, the hook had already been removed from the bathroom and was in the possession of Defendant's mother. Officer Burleson testified that Defendant's mother pointed out that they had found a small screen on the front of the hook and a memory card plugged into the side of the hook. Officer Burleson testified that the hook was designed to be like a hidden camera.

**{4}**     Defendant agreed to speak with Officer Burleson after he was advised of his *Miranda* rights. Officer Burleson testified that during their conversation Defendant admitted that (1) the camera was his; (2) on March 15, 2014, he placed the camera directly in front of the toilet on a shelf in the bathroom, approximately two feet off the floor; and (3) he was "just playing around" and was interested in seeing what was going on in the bathroom. Following his investigation, Officer Burleson handed the case off to detectives with the Hobbs Police Department.

**{5}**     Detective Mark Munro with the Hobbs Police Department testified that he was brought on to further investigate. Pursuant to his investigation, Detective Munro also spoke with Defendant. During their conversation, Detective Munro testified that Defendant admitted that he (1) bought the camera from eBay; (2) did not need to set up the camera—meaning that it only needed to be charged and turned on to work; (3) placed the camera in the bathroom on the evening of March 15, 2014; (4) had forgotten that he put the camera there and did not remove it when he intended to; and (5) had gotten the idea for the camera after viewing a pornography website.

**{6}**     Detective Munro testified that the camera was operable and detected motion. Detective Munro also determined that there were two video files saved on the camera's memory card. Both files were less than fifteen seconds and contained very grainy, dark images. Detective Munro testified that he was able to see movement in the videos, but otherwise was unable to see anything specific.

---

2Defendant's sister testified that the police responded the same day that the camera was found.

**{7}**     Following a bench trial, Defendant was convicted of one count of attempted manufacture of child pornography. Defendant appeals.

## DISCUSSION

**{8}**     Defendant advances a number of challenges to the sufficiency of the evidence supporting his conviction of attempted manufacture of child pornography. First, contending that the manufacture of child pornography requires a heightened mens rea, Defendant argues that there was insufficient evidence that he acted with the requisite mens rea. Second, Defendant argues there was insufficient evidence that he took a substantial step toward the completion of the manufacture of child pornography. Third, Defendant argues that there was insufficient evidence for the district court to conclude that any images, if produced, would have depicted a prohibited sexual act. Fourth, Defendant argues that there was insufficient evidence for the district court to conclude that any images, if produced, would have been obscene.

**{9}**     Defendant's arguments misapprehend the State's burden of proof regarding the charge of attempted manufacture of child pornography. Therefore, we begin by setting forth our standard of review and the State's burden of proof before analyzing Defendant's arguments within that framework.

## Standard of Review

**{10}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, an appellate court "views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (alteration, internal quotation marks, and citation omitted). We also disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before the reviewing court is not whether [it] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for [the fact-finder] to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted).

## The State's Burden

**{11}**     "The inchoate crime of attempt to commit a felony 'consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission.' " *State v. Green*, 1993-NMSC-056, ¶ 21, 116 N.M. 273, 861 P.2d 954 (quoting § 30-28-1). In this case, the felony at issue was the manufacture of child

pornography. Accordingly, the State had the burden to prove three elements beyond a reasonable doubt in order for the district court to convict Defendant of attempted manufacture of child pornography: (1) Defendant intended to commit the crime of manufacture of child pornography; (2) Defendant began to do an act which constituted a substantial part of the manufacture of child pornography but failed to commit the manufacture of child pornography; and (3) the attempt happened in New Mexico on or about March 16, 2014. UJI 14-2801 NMRA.[3] In this appeal, Defendant has not challenged the third element.

{12}     The fact-finder's determination of the first two elements are necessarily informed by the elements of the crime of manufacture of child pornography. *See* UJI 14-2801 (stating that the essential elements of the relevant felony must be given following the instruction on attempt to commit a felony). This Court has stated that the crime of manufacture of child pornography requires "that a person intentionally 'manufacture' a 'visual or print medium' that is 'obscene' and depicts a 'prohibited sexual act.' " *State v. Myers*, 2008-NMCA-047, ¶ 9, 143 N.M. 710, 181 P.3d 702 (*Myers I*), *rev'd on other grounds by* 2009-NMSC-016, 146 N.M. 128, 207 P.3d 1105 (*Myers II*);[4] *see* UJI 14-633 NMRA (identifying the elements of the crime of manufacture of child pornography). NMSA 1978, Section 30-6A-2(D) (2001) defines "manufacture" as "the production, processing, copying by any means, printing, packaging or repackaging of any visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age[.]" Section 30-6A-2(B)(1) defines "visual or print medium[,]" in relevant part, as "any film[.]" Section 30-6A-2(E) defines "obscene" as "any material, when the content if taken as a whole: (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards; (2) portrays a prohibited sexual act in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." Finally, Section 30-6A-2(A)(5) defines "prohibited sexual act" as a "lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation[.]"

{13}     With this framework in mind, we address whether substantial evidence supports Defendant's conviction for attempted manufacture of child pornography.

**Substantial Evidence Supports Defendant's Conviction for Attempt to Manufacture of Child Pornography**

**A.      Intent to Commit the Crime of Manufacture of Child Pornography**

{14}     Our task is to determine whether Defendant had the necessary mens rea for attempted manufacture of child pornography, which is a specific intent crime. *See State v. Johnson*, 1985-NMCA-074, ¶ 10, 103 N.M. 364, 707 P.2d 1174 ("The crime of

---

3Defendant was tried in a bench trial; therefore, no jury instructions were made a part of the record. Nevertheless, the relevant uniform jury instructions inform what the State was required to prove in this case.

4In *Myers*, this Court was analyzing the 2001 version of Section 30-6A-3(D). However, the language of the 2001 version is the same as the language of the 2007 version at issue in this case.

attempt to commit a felony is a specific intent crime."). We recognize that "[s]pecific intent . . . can seldom be proven by direct evidence[.]" *Green*, 1993-NMSC-056, ¶ 21. Therefore, we analyze Defendant's intent through "the reasonable inferences shown by the evidence and the surrounding circumstances. If there are reasonable inferences and sufficient circumstances then the issue of intent becomes a question of fact for the [fact-finder]." *Id.* (internal quotation marks and citation omitted).

**{15}** In this case, there was evidence that Defendant admitted that (1) he purchased the camera from eBay; (2) the camera did not need to be set up; (3) he placed the camera in the bathroom directly in front of the toilet on a shelf that was approximately two feet off the floor; (4) he was interested in seeing what was going on in the bathroom; and (5) he had gotten the idea for the camera after viewing a pornography website. In addition to Defendant's admissions, the district court also heard testimony indicating that the operable, motion-activated camera was designed to be like a hidden camera. Furthermore, the district court heard testimony that there was only one restroom in the home. Finally, the district court heard testimony that the camera was found by Defendant's sister while she was using the restroom.

**{16}** From his purchase, activation, and placement of the camera, the district court could reasonably conclude that Defendant intended to produce videos. Because the camera was placed in the home's only bathroom, the district court could reasonably conclude that Defendant intended the videos to include all of the home's residents, including his seventeen-year-old sister.[5] From the location where he placed the camera within the bathroom and his admission that he got the idea to do so after viewing a pornographic website, the district court could reasonably conclude that Defendant intended the videos to be obscene and to depict a prohibited sexual act.[6] *Cf. Myers II*, 2009-NMSC-016, ¶¶ 2, 47 (holding that there was sufficient evidence to conclude that images of underage girls that were actually manufactured by the defendant via a hidden video camera that was concealed in a bathroom and "positioned to capture the exposed pubic area of individuals before and after they had used the toilet" depicted a "prohibited sexual act" and were "obscene" as defined in the Sexual Exploitation of Children Act). Accordingly, this evidence was sufficient for the district court to conclude that Defendant intended to " 'manufacture' a 'visual or print medium' that is 'obscene' and depicts a

---

[5]Defendant contends that the State did not present any evidence that he intended to record his sister. In support of this argument, Defendant asserts that he told police that he "had hoped to view [an] adult member of the family." Although Defendant provides a citation to the audio recording from trial, the cited portion of the audio recording does not support his assertion. *See Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."). Nevertheless, even if evidence was introduced at trial suggesting that Defendant told police that "he hoped to view an adult family member[,]" it is irrelevant to our inquiry into whether substantial evidence supported his conviction. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the [fact-finder] is free to reject [the d]efendant's version of the facts.").

[6]As we explain here, the issue is whether Defendant intended to produce images that were obscene and that depicted a prohibited sexual act. Therefore, the district court did not need to decide whether any produced images would have actually been obscene or would have depicted a prohibited sexual act. Accordingly, we do not further address Defendant's arguments to the contrary.

'prohibited sexual act[,]' " *Myers I*, 2008-NMCA-047, ¶ 9; *see* § 30-6A-2(A), B), (D), (E), thus satisfying the first element of attempted manufacture of child pornography, *see* UJI 14-2801.

## B.    An Act Which Constituted a Substantial Part of the Manufacture of Child Pornography but Failed to Commit the Crime

**{17}** Defendant dedicates only a single paragraph to his contention that there was insufficient evidence for the district court to conclude that he began to do an act which constitute a substantial part of the manufacture of child pornography. Defendant uses the majority of that paragraph to identify relevant rules, dedicating only a single sentence to his argument: "Because there was not evidence that a completed manufacture would have occurred based on [his] conduct, his conduct was at most 'mere preparation[.]' " While we are not obligated to review this undeveloped argument, *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031, we conclude that it is meritless for the reasons that follow.

**{18}** This Court has recognized "that the dividing line between attempt and preparation is not always clear and is heavily dependent upon the surrounding factual circumstances." *State v. Brenn*, 2005-NMCA-121, ¶ 23, 138 N.M. 451, 121 P.3d 1050. However, we have also recognized that "even slight acts in furtherance of the crime will constitute an attempt." *Id.* ¶ 14 (alteration, internal quotation marks, and citation omitted). The facts of this case make it clear that Defendant's conduct went beyond mere preparation.

**{19}** Even though Defendant's purchase of the camera and any steps he took to activate it might be fairly characterized as mere preparation, Defendant's actions did not stop there. Defendant then placed the camera in the home's only bathroom. Within the bathroom, Defendant chose to position the camera directly in front of the toilet on a shelf that was approximately two feet off the floor. The motion-activated camera did not require any further action from Defendant to begin recording once it was placed. The only thing separating Defendant's conduct from completion of the crime appeared to be the quality of the videos produced by the camera. Therefore, the foregoing evidence was sufficient for the district court to conclude that Defendant began to do an act which constituted a substantial part of the manufacture of child pornography but failed to commit the crime, satisfying the second element of attempted manufacture of child pornography. *See* UJI 14-2801.

## CONCLUSION

**{20}** We affirm Defendant's conviction for attempted manufacture of child pornography.

**{21}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**ZACHARY A. IVES, Judge**