2008-NMCA-047

181 P.3d 702

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ronald MYERS, Defendant–Appellant.**

No. 26,837.

Court of Appeals of New Mexico.

Feb. 19, 2008.

Certiorari Granted, No. 30,993,
April 8, 2008.

constitutional rights were violated because neither the grand jury nor any witness at trial correlated particular photographs to any particular counts in the indictment. We agree with Defendant that the photographs on which the prosecution was based do not depict a prohibited sexual act as required by the statute. We therefore reverse.

## I. BACKGROUND

{2} In 2004, Defendant secretly set up a video camera in a unisex restroom adjacent to his office to record partially unclothed women in the restroom while they were using the restroom. He hid the video camera beneath a radiator, and positioned it so it would capture the pubic area of women before and after they used the restroom. He then drilled a hole in the wall between his office and the restroom and ran a cord from the camera to a TV/VCR recorder which was concealed in a closet in his office. Defendant's desk was in a position where he could observe when someone entered the restroom. Upon seeing a female enter the restroom, Defendant went to the closet, pressed record on the VCR, and filmed her while she used the restroom. The husband of Defendant's co-employee saw the camera while using the restroom, and an investigation followed, leading to the discovery of Defendant's activities. Videotapes of the unsuspecting females, and commercial pornographic videos and magazines were taken from Defendant's office. In a subsequent voluntary statement to the police, Defendant admitted to purchasing and installing the equipment to record females using the restroom for his sexual gratification.

{3} The videotapes depict five different females using the restroom on numerous occasions. Three of the women are adults, and two are minors. One of the minors was a sixteen-year-old high school intern who worked with Defendant during the summer of 2004, and the other minor was a seventeen-year-old daughter of Defendant's co-employee. The present statute which criminalizes voyeurism was not enacted until 2007, after Defendant's trial. *See* NMSA 1978, § 30–9–20 (2007) (prohibiting voyeurism, which is punishable as a misdemeanor, unless the victim is less than eighteen years of age,

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellant.

Edwards Law Firm, P.A., Marc W. Edwards, Santa Fe, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} Defendant was convicted in a bench trial of seven counts of sexual exploitation of children in violation of NMSA 1978, Section 30–6A–3(D) (2001). Defendant appeals, asserting: (1) the photographs on which the prosecution was based do not satisfy the statutory elements of the offense; (2) the statute is unconstitutionally vague as applied to Defendant's conduct; and (3) Defendant's

in which case the offense is punishable as a fourth degree felony). Since there was no statute which otherwise prohibited Defendant's conduct, the State elected to prosecute Defendant for videotaping the minors under the Sexual Exploitation of Children Act. NMSA 1978, §§ 30–6A–1 to –4 (1984, as amended through 2007). The indictment charges Defendant with sexual exploitation of children in violation of Section 30–6A–3(D) in nine separate counts.

{4} The State did not present the videotapes of the victims to the grand jury. Instead, the State retrieved thirty-five photographs from the videotapes, placed the photographs on nine separate sheets, and presented the nine sheets to the grand jury. There was no correlation between individual photographs and the nine counts of the indictment charging Defendant with sexual exploitation of children. Defendant filed a motion to dismiss, asserting that on their face, the photographs do not satisfy the statutory elements of the offense charged. At the hearing, Defendant emphasized that the photographs did not depict a "prohibited sexual act" as required by the statute. The district court observed that some of the photographs did not appear to satisfy the statute as required by *State v. Rendleman*, 2003–NMCA–150, 134 N.M. 744, 82 P.3d 554, "and that's where the problem occurs." The district court denied the motion to dismiss, but ordered the State to identify which pictures went with each count. The State filed a document entitled "Notice of Images Supporting Indictment." The "Notice" identifies specific photographs on twelve sheets with four photographs on each sheet as "the particular images which the State intends to proffer in support of the indictment." There is no order to the sheets, the photographs on the sheets, or how they correlate to the counts in the indictment. For example, the State discloses that Count I is contained on a photograph in the lower left corner of Sheet # 1 and photographs in the upper right hand corner and lower right hand corner of Sheet # 9.

{5} After the State filed the "Notice" Defendant filed a motion to dismiss, or in the alternative, to quash the indictment, arguing in part that the indictment should be dismissed because there was no indication that the grand jury connected particular photographs with particular counts in the indictment. Defendant also filed another motion to dismiss, asserting that there was no evidence that Counts IV, V, VII, VIII, and IX were supported by photographs that were submitted to the grand jury. The district court denied both motions.

{6} The State filed a nolle prosequi as to Count VII, and Defendant waived his right to a jury trial. Prior to opening statements, Defendant reminded the district court that "[w]e do not know which photos [the grand jury] used for each count. We have no idea whatsoever." At the beginning of the trial, the parties stipulated to admitting into evidence the twelve sheets of photographs that were previously used to identify which specific photographs related to each count of the indictment. The sheets were admitted into evidence as Exhibits 23–34. The parties further stipulated that the two victims were depicted in the photographs and that they were minors. While the videotapes from which the photographs were extracted were also admitted into evidence, the State relied exclusively on the photographs extracted from the videotapes in Exhibits 23–34 to prove its case, and the district court was not asked to, and it did not, consider the videotapes themselves in rendering its verdict. The district court relied exclusively on the photographs presented to it in Exhibits 23–34 to render its verdict.

{7} Before the State rested its case, the following exchange took place between the prosecutor and the court:

THE COURT: Is someone going to tie these photos into each particular count?

[COUNSEL]: I'm going to do that in closing, Judge. I think I can do that from what the girls are wearing as well as the counter. You can see that they're wearing different clothes, as well as the counters clearly depict different instances.

THE COURT: But closing isn't evidence.

[COUNSEL]: I'm sorry?

THE COURT: You have a problem with that. It has to be sworn testimony. What you say in closing is not evidence.

[COUNSEL]: But the pictures are evidence, Judge, and you can see the pictures. They depict—

THE COURT: Someone might have to tie them in to each count. I don't think you can do that in closing, but I'll let you try your case as you wish.

The State never made any attempt at trial to establish which photographs proved which counts. Defendant renewed his motion to dismiss on grounds that the photographs failed to satisfy the statutory elements of the offense, and for a directed verdict. Defense counsel further argued:

The other motion that I have to dismiss is based on the fact that we have no idea what exhibits go through what counts. We have heard from no witness that extracted those photos from the videos and how they were tied to any of the counts, whatsoever, which deprives me completely of arguing whether the photo actually coincides with the statutory criteria for sexual exploitation of children, so that I can ... go down through each count and argue each photo whether it fits the statutory criteria or not.

The motions were denied. Defendant presented no evidence, and the parties waived closing arguments. The district court directed a verdict on Count IX, and found Defendant guilty of Counts I–VI with the high school intern as the victim and Count VIII with the co-employee's daughter as the victim.

## II. DISCUSSION

█ {8} Defendant argues that reversible error was committed when his pretrial motion to dismiss on grounds that the photographs do not satisfy the statutory elements was denied, and the State argues that the real issue is whether the evidence at trial was sufficient to prove the crimes. The parties dispute whether the district court must hear and consider a pretrial motion to dismiss as part of its gatekeeping function when there is no assertion that the particular photographs at issue are constitutionally protected speech and the case is tried to the court without a jury. Without totally resolving this dispute, we reiterate our holding in *Rendleman*:

[O]n a pretrial motion to dismiss charges alleging the sexual exploitation of children, the district court may dismiss the charges where, on the undisputed face of the materials before the court, a jury could not find beyond a reasonable doubt that the material meets the elements of the offense as defined by the [Sexual Exploitation of Children] Act. Under these limited circumstances, no practical purpose would be served by a trial on the merits, and dismissal is therefore an appropriate and effective means of promoting judicial efficiency in light of the dispositive issue before the district court.

*Rendleman*, 2003–NMCA–150, ¶ 31, 134 N.M. 744, 82 P.3d 554 (internal quotation marks, citation, and alteration omitted). In this case, Defendant's pretrial motion to dismiss and his motion for directed verdict raise the same issue: whether the photographs admitted into evidence satisfy the statutory elements of the crimes charged. Specifically, Defendant argues: (1) the photographs do not depict a prohibited sexual act; and (2) the photographs are not obscene. We review these arguments de novo. *Id.* ¶ 66.

{9} Defendant was convicted of sexual exploitation of children by violating Section 30–6A–3(D), which provides:

It is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age. A person who violates the provisions of this subsection is guilty of a second degree felony.

Paraphrasing, the statute requires that a person intentionally "manufacture" a "visual or print medium" that is "obscene" and depicts a "prohibited sexual act." *See* Sections 30–6A–2(B), (D), and (E) (defining what is a "visual or print medium," what it means to "manufacture," and what is "obscene" under the Sexual Exploitation of Children Act).

█ {10} The question Defendant presents is whether the photographs admitted

into evidence depict a "prohibited sexual act." However, Defendant did not make the photographs, the State did. What Defendant made were videos, and the photographs were extracted by the State from those videos. We therefore first determine whether to consider the photographs which the State made, but Defendant did not, or the videotapes which Defendant actually made. *See* § 30–6A–2(B)(1) (defining a "visual or print medium" in pertinent part as "any film, photograph, [or] ... videotape"). Since the district court was not asked to consider the videotapes made by Defendant, and the district court did not consider them in rendering its verdict, neither do we. *See Jewell v. Commonwealth*, 8 Va.App. 353, 382 S.E.2d 259, 260 (1989) (concluding that because the trial court expressly stated it did not consider specific evidence in a bench trial, the appellate court would not consider that evidence on appeal in determining whether the state proved an element of the offense). We therefore consider only the photographs as demonstrative of what is on the videotapes to determine whether they depict a "prohibited sexual act." *Compare Rendleman*, 2003–NMCA–150, ¶ 69, 134 N.M. 744, 82 P.3d 554 (reversing an order of the district court dismissing sexual exploitation of children counts based on videotapes where the briefs did not discuss the videotapes, the briefs did not establish where in the record the videotapes were identified, or where the videotapes were considered by the district court, because "each count must be analyzed in terms of the content of the depiction charged").

{11} The statute requires the depiction of a "prohibited sexual act" as defined in Section 30–6A–2(A) (providing five separate definitions of a "prohibited sexual act"). The specific "prohibited sexual act" at issue in this case is set forth at subsection (5), which states that a "lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation" is a "prohibited sexual act." There are three discreet elements of this "prohibited sexual act."

{12} First, there must be an "exhibition" that is both: (1) "lewd" and (2) "sexually explicit." *Rendleman*, 2003–NMCA–150,

¶ 42, 134 N.M. 744, 82 P.3d 554. For guidance in determining whether the photographs are "lewd" we look to the factors set forth in *United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986) for guidance. *Rendleman*, 2003–NMCA–150, ¶ 43, 134 N.M. 744, 82 P.3d 554. The "*Dost* factors" include consideration of whether:

> (1) the focus is on the genital or pubic area; (2) the setting is sexually suggestive; (3) the child is depicted in an unnatural pose, or in inappropriate attire, considering the child's age; (4) the child is fully or partially clothed; (5) the depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) the depiction is designed to elicit a sexual response in the viewer.

*Id.* While not all the factors must be present to conclude that a photograph is "lewd," Section 30–6A–2(A)(5) itself expressly requires the first and the last factors. In *Rendleman*, we analyzed these factors and the statutory terms and concluded that for there to be a "lewd and sexually explicit exhibition" in a photograph, the photograph must contain "a visible display or readily discernible depiction of a child engaged in sexually provocative conduct. In other words, the photograph must be identifiable as hard-core child pornography; that is, it must display visible signs of sexual eroticism, rather than merely depict a naked child." *Rendleman*, 2003–NMCA–150, ¶ 44, 134 N.M. 744, 82 P.3d 554.

{13} Second, the photograph must "focus on the genitals or pubic area of any person." § 30–6A–2(A)(5). We also examined this statutory requirement in *Rendleman* and concluded: "For the conduct to be unlawful, the depiction must clearly focus on the groin area of a child. Focus can be determined by photographic elements, such as design, composition, lighting, positioning, attire, and setting." *Rendleman*, 2003–NMCA–150, ¶ 45, 134 N.M. 744, 82 P.3d 554.

{14} Third, in order to depict a "prohibited sexual act," the photograph must be "for the purpose of sexual stimulation." *Id.* ¶ 46. In *Rendleman* we said that this prong of the statutory element is "[t]he most difficult element to articulate" because whether the purpose of the photograph is to elicit a sexual

response is capable of being evaluated from either a subjective standard (the specific defendant in the case) or an objective standard. *Id.*

> Under an objective standard, the central question is whether, based on the overall content of the photograph, a reasonable person could find the photograph was intended to elicit a sexual response. Application of an objective standard requires courts to focus on the photograph itself, and not on the circumstances surrounding the taking of the photograph. In short, the pictures speak for themselves.

*Id.* ¶ 47 (internal quotation marks, citations, and alterations omitted). We reasoned that child pornography focuses on the harm to the child which results from "trespasses against the child's dignity when treated as a sexual object," *id.* ¶ 48, and "it is not a defendant's private reaction that transforms an innocent photo into a lewd exhibition, but rather the objectively ascertainable intended effect on the viewer." *Id.* We therefore concluded that whether the photograph is "for the purpose of sexual stimulation" is determined under an objective standard:

> Only if the photo itself raises a question of illegal purpose (if a jury could find it pornographic) should it be submitted to the jury to make a finding on the objective evidence and subjective intent of the photographer. At trial, the subjective motive of the photographer, the circumstances of the photography, and the use of the photo become relevant on the issue of intent.

*Id.* ¶ 49.

█ {15} We now turn to the photographs in this case. It is impossible for us to determine on this record which photographs were relied on to prove each count of the indictment. At trial the prosecutor herself stated, "to some extent, which photograph goes with which count is arbitrary," and the prosecutor failed to establish which photographs supported each count. On this basis alone, reversal of Defendant's convictions is warranted. *See id.* ¶¶ 38, 49, 69 (emphasizing that each count must be analyzed in terms of the content of each photograph itself). For purposes of analysis, however, we assume the State's "Notice" describes the photographs

which the State relied on to prove each count.

█ {16} The photographs support a conclusion that the video camera was positioned in the restroom to capture the pubic area of the victims before or after they used the restroom. As to each count (except Counts I, II and V) Victim's pants are down below the waist and Victim's pubic hair is pictured. In the Count I photographs, Victim's arm is hanging between her legs, blocking the view of her pubic area, but she is clearly nude from the waist down and facing the camera. In the photographs supporting Count II, Victim is either in the process of pulling up or pulling down her underwear, and the pubic area is, for the most part, obscured by the underwear. The photographs supporting Count V show Victim in the process of either pulling up or pulling down her pants and the pubic area is covered by her pants. In none of the photographs are any external female genitalia discernible.

{17} Consideration of the *Dost* factors leads us to conclude that the photographs are not "lewd" and "sexually explicit" as described in *Rendleman*. The only *Dost* factor which the photographs satisfy is the first: the hidden camera was positioned in the restroom to photograph the pubic area of women using the restroom. However, there is nothing inherently sexually suggestive about a unisex restroom at the workplace; the pose and attire of the minors in the photographs is appropriate to their activity, i.e., using the restroom; the minors are partially unclothed; and the photographs do not depict the minors as suggesting coyness or a willingness to engage in sexual activity. As we have already discussed, in order for a photograph to depict a "lewd and sexually explicit exhibition," *Rendleman* requires the photograph to show "a visible display or readily discernible depiction of a child engaged in sexually provocative conduct. In other words, the photograph must be identifiable as hard-core child pornography; that is, it must display visible signs of sexual eroticism, rather than merely depict a naked child." *Id.* ¶ 44. The photographs relied on by the State fail to satisfy this standard.

{18} The photographs also fail to satisfy threshold requirements mandated by *Rendleman* to satisfy the statutory requirement that they are "for the purpose of sexual stimulation." Again, *Rendleman* requires that we apply an objective standard, by ignoring the circumstances surrounding the taking of the photographs, and focusing on the photographs themselves. *Id.* ¶ 47. While Defendant admitted he filmed the women using the restroom for his sexual gratification, the circumstances of the photography, and the use of the photographs are considered "[o]nly if the photo itself raises a question of illegal purpose (if a jury could find it pornographic)[.]" *Id.* ¶ 49. A "reasonable person" (as opposed to a voyeur) would not conclude, from the overall content of the photographs themselves, that they were intended to elicit a sexual response. They depict minors who are partially unclothed before or after they used the restroom, and nothing more.

{19} For the foregoing reasons, we hold that the photographs identified as supporting each count of the indictment do not depict a "prohibited sexual act" as defined in Section 30–6A–2(A)(5). They do not depict a "lewd and sexually explicit exhibition" and the photographs themselves do not demonstrate an intent to elicit a sexual response in a reasonable viewer, as required, to satisfy the statutory requirement that they are "for the purpose of sexual stimulation."

{20} In light of our holding, we do not address whether the photographs are "obscene" as defined in Section 30–6A–2(E), or Defendant's remaining arguments. The State appealed the order of the district court which stayed pending this appeal that portion of the judgment and sentence which requires Defendant to register as a sex offender. *See* NMSA 1978, § 29–11A–4(A) (2005) ("A sex offender residing in this state shall register with the county sheriff for the county in which the sex offender resides."); NMSA 1978, §§ 29–11A–3(D)(1) and (E)(4) (2005) (providing that a "sex offender" is a resident of New Mexico who is convicted of a sex offense, and defining sexual exploitation of children as a sex offense). In light of our

holding, it is not necessary to address this argument either.

## III. CONCLUSION

{21} The judgment and sentence of the district court is reversed, and the case is remanded to the district court with instructions to set aside Defendant's convictions.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and RODERICK T. KENNEDY, Judges.