IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-016

Filing Date: April 7, 2009

Docket No. 30,993

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

RONALD MYERS,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Michael Eugene Vigil, District Court Judge

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner

Caren Ilene Friedman
Santa Fe, NM

Edwards Law Office
Marc Walker Edwards
Santa Fe, NM

for Respondent

OPINION

MAES, Justice.

{1}     Ronald Myers (Defendant) was convicted of seven counts of sexual exploitation of children, contrary to NMSA 1978, Section 30-6A-3(D) (2001), for covertly videotaping minor female victims using the bathroom.  The Court of Appeals reversed  Defendant's convictions, concluding that the images were neither "lewd" nor "sexually explicit," and

1

were not manufactured "for the purpose of sexual stimulation" under *State v. Rendleman*, 2003-NMCA-150, 134 N.M. 744, 82 P.3d 554. *State v. Myers*, 2008-NMCA-047, ¶¶ 17-19, 143 N.M. 710, 181 P.3d 702. We reverse the judgment of the Court of Appeals and remand the case to that Court for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

**{2}**    The trial court reasonably could have found the following facts. Sometime between May and September, 2004, Defendant, an employee of the Department of Transportation, set up a hidden video camera in a unisex bathroom adjacent to his office. The camera was concealed beneath a radiator and positioned to capture the exposed pubic area of individuals before and after they had used the toilet. The video camera was connected to a television and videocassette recorder (TV/VCR), which was hidden behind a bookcase in Defendant's closet. Upon seeing a female enter the bathroom, Defendant would go to the closet, press record on the TV/VCR, and videotape the female as she used the toilet. Defendant would stop the videotape after the female had exited the bathroom.

**{3}**    On September 15, 2004, the video camera was discovered and a criminal investigation ensued. The police searched Defendant's office and discovered the TV/VCR hidden in the closet, a receipt for the video camera, videotapes containing images of the unsuspecting female victims, and commercial pornographic videotapes and magazines. In a subsequent voluntary statement to the police, Defendant admitted that he had videotaped the female victims for the purpose of his own sexual gratification.

**{4}**    The videotapes contained images of five different females using the bathroom on various occasions. Three of the females were adults and two were minors. One of the minors was a sixteen-year-old high school summer intern at the department, while the other was the seventeen year-old daughter of Defendant's co-worker. After viewing photographic images extracted from the videotapes, and listening to the testimony of the investigating officers, a grand jury indicted Defendant on nine counts of sexual exploitation of children contrary to Section 30-6A-3(D). Counts I, II, III, IV, V, VIII and IX pertained to the sixteen-year-old minor, whereas Counts VI and VII pertained to the seventeen-year-old minor.

**{5}**    Prior to trial, Defendant moved to dismiss the indictment, claiming that the photographs do not depict a "prohibited sexual act" under NMSA 1978, Section 30-6A-2(A) (1984, as amended through 2001). The trial court held a hearing on Defendant's motion. At the hearing, Defendant argued that dismissal was appropriate because the images do not depict a "lewd and sexually explicit exhibition" as defined by *Rendleman*, 2003-NMCA-150, ¶ 44. The trial court denied Defendant's motion, concluding that "some of these photographs clearly fit the criteria set out in *Rendleman*. Some do not, and that's where the problem occurs." The trial court therefore ordered the State "to tie up which exhibits go with which count," noting that there were seventeen photographic exhibits, but that Defendant had been charged with only nine counts of sexual exploitation of children

contrary to Section 30-6A-3(D).  In response, the State filed a Notice of Images Supporting Indictment (Notice of Images), indicating "the particular images which the State intends to proffer in support of [each count of] the indictment."  The State also filed a nolle prosequi with respect to Count VII of the indictment.

**{6}**    Defendant filed a motion to dismiss or, in the alternative, a motion to quash the indictment.  Defendant claimed in relevant part that

> the grand jury aid failed to properly present and create a record of what image in an exhibit was found by the grand jury to be probable cause for the individual counts.  . . .  This lack of connecting images with counts . . . prevents the defendant from connecting images and dates of incident with particular counts, thus prejudicing the defendant['s] ability to [defend] each count.

The trial court denied Defendant's motion, noting that, under *Rendleman*, Defendant's remedy "is not a Motion to Dismiss; [it is] a Bill of Particulars asking the State to indicate which exhibits go to which count."

**{7}**    During Defendant's bench trial, the parties stipulated that the female victims depicted in the photographic exhibits were minors at the time the images were taken.  Following the presentation of the State's case-in-chief, the trial court directed a verdict in favor of Defendant on Count IX of the indictment, concluding that the evidence was insufficient to establish the identity of the victim because "there is no depiction of a face."  Defendant did not present any evidence in his defense, and both Defendant and the State waived closing arguments.  Thereafter, the trial court found Defendant guilty of the remaining charges and rendered judgment accordingly.

**{8}**    The Court of Appeals reversed the judgment of the trial court and set aside Defendant's convictions. *Myers*, 2008-NMCA-047, ¶ 21. Preliminarily, the Court observed that, "[i]t is impossible . . . to determine on this record which photographs were relied on to prove each count of the indictment" because the State had failed to adduce any facts linking the photographic exhibits to each of the counts charged. *Id.* ¶ 15. The Court observed that "[o]n this basis alone, reversal of Defendant's convictions is warranted." *Id.* Nonetheless, for the purpose of its analysis, the Court assumed that the "State's 'Notice' describes the photographs which the State relied on to prove each count." *Id.*

**{9}**    To determine whether the images were "lewd" and "sexually explicit" as defined by Section 30-6A-2(A)(5), the Court considered the factors enumerated in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), which include whether

> (1) the focus is on the genital or pubic area; (2) the setting is sexually suggestive; (3) the child is depicted in an unnatural pose, or in inappropriate attire, considering the child's age; (4) the child is fully or partially clothed;

3

(5) the depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) the depiction is designed to elicit a sexual response in the viewer.

*Myers*, 2008-NMCA-047, ¶ 12 (quoting *Rendleman*, 2003-NMCA-150, ¶ 43). The Court noted that, pursuant to *Rendleman*, "the photograph must contain a visible display or readily discernible depiction of a child engaged in sexually provocative conduct. In other words, the photograph must be identifiable as hard-core child pornography; that is, it must display visible signs of sexual eroticism, rather than merely depict a naked child." *Myers*, 2008-NMCA-047, ¶ 12 (internal quotation marks and citation omitted). Applying the *Dost* factors and the standards delineated in *Rendleman*, the *Myers* Court concluded that

> the photographs are not "lewd" and "sexually explicit" as described in *Rendleman*. The only *Dost* factor which the photographs satisfy is the first: the hidden camera was positioned in the restroom to photograph the pubic area of women using the restroom. However, there is nothing inherently sexually suggestive about a unisex restroom at the workplace; the pose and attire of the minors in the photographs is appropriate to their activity, i.e., using the restroom; the minors are partially unclothed; and the photographs do not depict the minors as suggesting coyness or a willingness to engage in sexual activity.

*Id.* ¶ 17.

**{10}** The Court further concluded that the photographs were not manufactured "for the purpose of sexual stimulation" as required by Section 3-6A-2(A)(5). *Myers*, 2008-NMCA-047, ¶ 18 (internal quotation marks and citation omitted) The Court noted that

> *Rendleman* requires that we apply an objective standard, by ignoring the circumstances surrounding the taking of the photographs, and focusing on the photographs themselves. While Defendant admitted he filmed the women using the restroom for his sexual gratification, the circumstances of the photography, and the use of the photographs are considered [o]nly if the photo itself raises a question of illegal purpose (if a jury could find it pornographic)[.] A "reasonable person" (as opposed to a voyeur) would not conclude, from the overall content of the photographs themselves, that they were intended to elicit a sexual response. They depict minors who are partially unclothed before or after they used the restroom, and nothing more.

*Id.* Accordingly, the Court reversed the judgment of the district court and set aside Defendant's convictions. *Id.* ¶ 21.

**{11}** In light of its conclusion, the Court did not reach Defendant's remaining claims that the images were not "obscene" as defined by Section 30-6A-2(E), and that the Sexual

4

Exploitation of Children Act (Act), NMSA 1978, §§ 30-6A-1 to -4 (1984, as amended through 2001), was void for vagueness as applied to Defendant's conduct. *Myers*, 2008-NMCA-047, ¶ 20. Likewise, the Court did not reach the State's claim, raised for the first time in its answer brief, that the trial court improperly had entered a stay of execution on the portion of Defendant's sentence that required him to register as a sex offender pursuant to the Sex Offender Registration and Notification Act, NMSA 1978, §§ 29-11A-1 to -8 (1995, as amended through 2003), pending the outcome of Defendant's appeal. *Id.*

**{12}** We subsequently granted the State's petition for writ of certiorari, which presented the following questions for our review: (1) "Is the 'hard-core child pornography' standard applied in this case either justified or appropriate when considering the elements of sexual exploitation of children?"; (2) "Does the sexual exploitation of children statute require the reviewing court to ignore the context of the material, even when it is undisputed, as in this case, that it was made for a sexual purpose?"; and (3) "Did the Court of Appeals err in determining that the convictions could be reversed for failure [of] the State to prove which photograph related to which count of the indictment." *State v. Myers*, 2008-NMCERT-4, 144 N.M. 48, 183 P.3d 933.

## II.    STANDARD OF REVIEW

**{13}** To the extent that the State's claim implicates the proper construction of the Act, our standard of review is de novo. *See State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P. 3d 1022 ("We review questions of statutory interpretation *de novo*."). To the extent that the State's claim implicates the sufficiency of the evidence, however,

> [t]he reviewing court engages in a two-step process: First it reviews the evidence [resolving all conflicts and indulging all permissible inferences] with deference to the findings of the trial court; then it determines whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt.

*State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

**{14}** Defendant claims, however, that the trial court improperly denied his pre-trial motion to dismiss and, therefore, the appropriate standard of review is de novo. We reject this claim because "when a case proceeds to trial, error resulting from an improperly denied pretrial motion is not reversible for the result becomes merged in the subsequent trial." *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008 -NMCA- 153, ¶ 34, 145 N.M. 328, 198 P.3d 354, *cert. denied*, 2008-NMCERT-010, __ N.M. __, 201 P.3d 855 (internal quotation marks and citation omitted). *But see Chaara v. Lander*, 2002-NMCA-053, ¶ 22, 132 N.M. 175, 45 P.3d 895 (noting that questions of law are not merged into the trier of fact's verdict). Accordingly, we review Defendant's judgment of conviction, rather than the denial of his pre-trial motion to dismiss.

5

**III. DISCUSSION**

**{15}** Before addressing the merits of the State's claims, we review the language, history, and purpose of the Act. Section 30-6A-3(D) provides in relevant part, that "[i]t is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." Section 30-6A-2(E) defines the term "obscene" as "any material, when the content if taken as a whole: (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards; (2) portrays a prohibited sexual act in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." Section 30-6A-2(A) defines the term "prohibited sexual act" in relevant part as a "lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation."

**{16}** In *Rendleman*, the Court of Appeals examined the historical context of the Act, explaining that

> New Mexico's first law prohibiting the visual sexual exploitation of children appeared as a category of child abuse in 1978 and simply banned the "lewd exhibition of the genitals or pubic area." 1978 N.M. Laws ch. 103, § 1(A)(3)(e). In 1984, two years after *Ferber*[1] was decided, our legislature made the sexual exploitation of children a separate crime and added the purpose prong, censuring the "lewd exhibition of the genitals or pubic area . . . *for the purpose of sexual stimulation*." 1984 N.M. Laws ch. 92, §§ 1 and (2)(A)(5) (emphasis added). The definition was further refined in 1993 to read: "lewd *and sexually explicit* exhibition *with a focus on* the genitals or pubic area . . . for the purpose of sexual stimulation. 1993 N.M. Laws ch. 116, § 1(A)(5) (emphasis added).

*Rendleman*, 2003-NMCA-150, ¶ 41 (footnote added).

**{17}** The purpose of the Act is to protect children from "the harm to the child that flows from trespasses against the child's dignity when treated as a sexual object." *Rendleman*, 2003-NMCA-150, ¶ 48.

> Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult can consent to its diminishment. When a child is made the target of the pornographer-photographer, the statute

---

[1]*See also New York v. Ferber*, 458 U.S. 747, 764-65 (1982) (holding that sexually explicit material involving children generally is not protected by the First Amendment of the federal constitution and, therefore, the distribution, possession, and manufacture of such material constitutionally may be criminalized even if the material is not "obscene" under *Miller v. California*, 413 U.S. 15, 24 (1973)).

will not suffer the insult to the human spirit, that the child should be treated as a thing.

*United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987) (examining 18 U.S.C. § 2251 (1978), which prohibits the sexual exploitation and other abuse of children). "Child pornography is particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for child pornography." *People v. Lamborn*, 708 N.E. 2d 350, 353 (1999) (examining 720 ILCS 5/11-20.1(a)(1)(vii), (a)(6) (West 1996), which prohibits child pornography).

**A.      Whether the evidence was sufficient to establish that the images depict a "lewd and sexually explicit exhibition with a focus on the genitals" as defined by Section 30-6A-2(E).**

**{18}**      The State first claims that the Court of Appeals improperly concluded that the photographic images were neither lewd nor sexually explicit because they do not show "'a visible display or readily discernible depiction of a child engaged in sexually provocative conduct.'" *Myers*, 2008-NMCA-047, ¶ 17 (quoting *Rendleman*, 2003-NMCA-150, ¶ 44). Specifically, the State claims that the Court improperly applied the *Dost* factors and improperly concluded that the Act only prohibits "hard-core child pornography." We agree.

**{19}**      A prohibited sexual act is composed of three essential elements: (1) a "lewd and sexually explicit exhibition"; (2) "with a focus on the genitals or pubic area of any person"; (3) "for the purpose of sexual stimulation." Section 30-6A-2(A)(5). The first essential element requires an exhibition that is both sexually explicit and lewd. In *Rendleman*, the Court of Appeals adopted the dictionary definition of the term exhibition, defining it as

> "showing, evincing, or showing off." To "exhibit" is to "show or display . . . outwardly esp[ecially] by visible signs or actions; . . . to have as a readily discernible quality or feature; [or] . . . to represent or make clear by a drawing, plan or other visual means." Webster's New Int'l Dictionary 796 (3d ed.1986).

*Rendleman*, 2003-NMCA-150, ¶ 44 (alterations in original). The term "explicit" is defined as "[f]ully and clearly expressed; leaving nothing implied. . . . Describing or portraying nudity or sexual activity in graphic detail." The American Heritage Dictionary of the English Language 626 (4th ed. 2000). A "sexually explicit exhibition" therefore is a clear, graphic and unequivocal display or portrayal of nudity or sexual activity.

**{20}**      To violate the Act, however, a sexually explicit exhibition must also be lewd. We agree with the Court of Appeals that it is appropriate to look to the *Dost* factors for guidance in determining whether a sexually explicit exhibition is lewd. *See Myers*, 2008-NMCA-047, ¶ 12; *Rendleman*, 2003-NMCA-150, ¶ 43. As previously explained, these factors include:

7

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832. "We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. Although *Dost* provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a [lewd] exhibition. The inquiry will always be case-specific." *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999).

**{21}** We take this opportunity to clarify the scope of the first and sixth *Dost* factors in relation to the second and third essential elements of Section 30-6A-2(A)(5), which require the challenged image: (2) to "focus on the genitals or pubic area"; (3) "for the purpose of sexual stimulation." Both the first *Dost* factor and the statute concentrate on whether the image focuses on the genital or pubic area of the child and, therefore, we conclude that they are duplicative of one another. Under both the first *Dost* factor and the statute, "[f]ocus can be determined by photographic elements, such as design, composition, lighting, positioning, attire, and setting." *Rendleman*, 2003-NMCA-150, ¶ 45. However, the sixth *Dost* factor focuses on whether the visual depiction was intended or designed to elicit a sexual response in the *viewer*, whereas the statute focuses on whether the visual depiction was intended or designed to elicit a sexual response in the *defendant*. Accordingly, the sixth *Dost* factor and the statute require separate and distinct inquiries. The former requires the trier of fact to examine whether the image depicts the child from a sexualized point of view; *Rendleman*, 2003-NMCA-150, ¶ 47; *People v. Sven*, 848 N.E. 2d 228, 233-39 (Ill. App. Ct. 2006), whereas the latter requires the trier of fact to examine whether the defendant possessed, distributed, or manufactured the challenged image for the purpose of his or her own sexual stimulation. *See* discussion *infra* Part III.B.

**{22}** In determining whether the images are lewd, we find the reasoning of *People v. Sven*, 848 N.E. 2d at 239-40, to be persuasive. In *Sven*, the Appellate Court of Illinois concluded that a videotape produced by the defendant, which depicted an unsuspecting teenage girl bathing naked in the bathtub, was lewd under Illinois' child pornography statute. The Court reasoned that

Essentially, the tape places the viewer in the role of voyeur. There is no narrative or plot. The images are not a scene connected to anything

8

else. In watching the tape, the viewer stands in relation to the victim as would a peeping tom. This point of view is reinforced by the fact that the victim does not react to the camera whatsoever. Whether an image is candid or posed has been deemed relevant in determining whether an image is lewd. Generally, as suggested by the third [*Dost*] factor, certain poses would support a finding that an image is lewd. However, where, as here, the viewer is placed in the point of view of a voyeur, that the images are candid contributes to their lewdness. Because the victim does not react, the image creates a sense of covert observation that would not otherwise exist.

Voyeurism is sexually motivated conduct, and it is recognized as deviant behavior. Thus, by placing the viewer in the role of voyeur, the images become sexualized. Moreover, they are sexualized in a way consistent with deviant behavior.

*Id.* at 239-40 (footnote and citations omitted).

**{23}** With these principles in mind, we examine the images at issue in this case to determine whether they are lewd. Each of the photographs depict the female victims unclothed from the waist down, either before or after they had used the toilet. In many of the photographs, the victims' pubic hair or naked buttocks are plainly visible. Indeed, the victims' unclothed pubic area appears prominently in the center of the photographs and, consequently, is the focal point of the images. The victims, however, appear to be unaware that they are being photographed as they engage in an intimate bodily function. The images therefore place the viewer in the position of a voyeur. This feeling of voyeurism is enhanced by the quality of the images, which are slightly unfocused and grainy, the perspective of the images, the victims are viewed from the floor adjacent to the toilet, and the shadows that border the images, which lend the sense that the viewer is peering at the female victims through a peep hole on the floor. Because the images had a voyeuristic and deviant quality that rendered them sexual in nature, we conclude that the evidence was sufficient for the trial court reasonably to find that the images were lewd.

**{24}** The Defendant claims, however, that the images are not lewd because "[t]here is nothing sexually suggestive about a workplace bathroom" and "the pose and attire of the [victims] are appropriate" to their activity. We emphasize that not all of the *Dost* factors need be present in order for an image to be found lewd under the Act. Nonetheless, we disagree with Defendant's characterization of the manner in which the *Dost* factors apply to the unique circumstances of this case. First, although a workplace bathroom is not inherently sexually suggestive, the private nature of the setting, the intimate bodily function in which the victims are engaged, and the voyeuristic quality of the images all combine to transform this otherwise prosaic setting into a fetishistic and sexualized one.

**{25}** Second, although the victims' state of undress is appropriate to the activity in which they are engaged, i.e., using the toilet, the viewing and photographing of such excretory

activity, without the apparent knowledge or consent of the subject of the photograph, is inappropriate. This is not a scenario in which proud parents have photographed their toddler being potty trained. Rather, these images depict fully developed adolescent girls who appear to have no idea that they are being photographed as they use the toilet. Given that it is undisputed that these images lack any literary, artistic, political, or scientific value, it is unclear what purpose, aside from a sexual one, these images possibly could serve.

**{26}** The Court of Appeals concluded, however, that the images were not lewd because they were not "'identifiable as hard-core child pornography.'" *Myers*, 2008-NMCA-047, ¶ 12 (quoting *Rendleman*, 2003-NMCA-150, ¶ 44). We disagree. The term "hard-core pornography" typically is used in the context of adult pornography to refer to obscene material that is unprotected by the First Amendment of the federal constitution. *See Miller*, 413 U.S. at 27. Thus, hard-core pornography is synonymous with obscene pornography. *See, e.g.*, *Farrell v. Burke*, 449 F.3d 470, 492 (2d Cir. 2006) ("[O]bscenity is defined as pornography that is 'hard core,' i.e., a subset of the broader category of pornographic materials."). Although the United States Supreme Court has held that "the States are entitled to greater leeway in the regulation of pornographic depictions of children," *Ferber*, 458 U.S. at 756, and, therefore, "[t]he [First Amendment] test for child pornography is separate from the obscenity standard enunciated in *Miller*," *Ferber*, 458 U.S. at 764, the Act expressly incorporates the *Miller* obscenity standard. *See Rendleman*, 2003-NMCA-150, ¶ 52 (noting that, in enacting Section 30-6A-2(E), the legislature "[adopted] the *Miller* criteria for obscenity"); *see also supra* footnote 1. Accordingly, to the extent that the Act may be construed to prohibit only hard-core child pornography, this prohibition derives, if at all, from the statutory definition of the term obscene, rather than from the statutory definition of the term lewd. We therefore address this issue below.

**B.    Whether an objective standard applies to the determination of whether the images were manufactured "for the purpose of sexual stimulation" as defined by Section 30-6A-2(A)(5).**

**{27}** The State next claims that the Court of Appeals improperly concluded that the images were not manufactured "for the purpose of sexual stimulation" as defined by Section 30-6A-2(A)(5). Specifically, the State claims that the Court of Appeals should have considered extrinsic evidence, including Defendant's admission that he had manufactured the images for the purpose of his own sexual gratification and the circumstances under which Defendant videotaped the unsuspecting minor female victims, in determining whether the images had a sexual purpose. We agree.

**{28}** In *Rendleman*, the Court of Appeals observed that "[t]he most difficult element [of Section 30-6A-2(A)(5)] to articulate is the sexual purpose prong." *Rendleman*, 2003-NMCA-150, ¶ 46.

> Is this a subjective or objective standard, and should we [evaluate] the response of an average viewer or the specific defendant in [the] case?

10

Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?

*Id.* (alterations in original) (quoting *Amirault*, 173 F.3d at 34).

**{29}**     The *Rendleman* Court noted that "[t]he premise behind an objective intent analysis is that child pornography is not created and the Act is not violated simply because a person derives sexual enjoyment from otherwise innocent photographs." *Id.* ¶ 48.  The Court adopted the objective standard, concluding that "it is not a defendant's private reaction that transforms an innocent photo into a lewd exhibition, but rather the objectively ascertainable effect on the viewer." *Id.*  Accordingly, "[o]nly if the photo itself raises a question of illegal purpose (if a jury could find it pornographic) should it be submitted to the jury to make a finding on the objective evidence and subjective intent of the photographer." *Id.* ¶ 49.

**{30}**     Our review of the Act reveals, however, that innocent photographs are excluded from its purview.  As previously explained, Section 30-6A-2(A)(5) requires the challenged image to depict a "lewd and sexually explicit exhibition with a focus on the genitals or pubic area" of a child, and Section 30-6A-2(E) requires the image to be "obscene," i.e., appeal to a prurient interest in sex as determined by the average person applying contemporary community standards, portray a prohibited sexual act in a patently offensive way, and lack any serious literary, artistic, political, or scientific value.  We cannot conceive of any circumstances in which an obscene image that depicts a lewd and sexually explicit exhibition with a focus on the genitals or pubic area of a child, properly can be characterized as an innocent photograph.  Because innocent photographs do not violate the Act, the objective standard is unnecessary to prevent against their incidental criminalization.

**{31}**     Moreover, we conclude that the objective standard is flawed because it improperly views the challenged material from the perspective of an ordinary reasonable person, even though an ordinary reasonable person is "not sexually stimulated by child pornography." *Sven*, 848 N.E.2d at 236 (rejecting objective standard).  As the United States Supreme Court observed in *Mishkin v. State of New York*, 383 U.S. 502 (1966), which rejected the objective standard in the context of obscenity:

> [A]ppellant's sole contention regarding the nature of the material is that some of the books involved in this prosecution . . . do not satisfy the prurient-appeal requirement because they do not appeal to a prurient interest of the 'average person' in sex, that 'instead of stimulating the erotic, they disgust and sicken.' We reject this argument as being founded on an unrealistic interpretation of the prurient-appeal requirement.
>
> Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-

11

appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of members of that group.

*Id.* at 508 (footnote omitted).

**{32}** We therefore reject the objective standard and adopt the subjective standard, which examines the criminal defendant's actual intent in distributing, possessing, or manufacturing the images, as the proper standard by which to assess whether the challenged material fulfills the "for the purpose of sexual stimulation" element of Section 30-6A-2(A)(5). In determining the defendant's intent, the trier of fact is not limited to the four corners of the photographs but, rather, is permitted to consider extrinsic evidence of the defendant's intent, such as the circumstances under which the photographs were taken, the location where the photographs were found, and the presence or absence of other pornographic materials. *See, e.g.*, *People v. Batchelor*, 800 P.2d 599, 605 (Colo. 1990) (examining circumstances surrounding the production of certain photographs to determine whether they had been taken for the purpose of defendant's own sexual gratification); *Shultz v. State*, 811 P.2d 1322, 1332 (Okla. Crim. App. 1991) (en banc) (examining "evidence outside the pictures themselves" to determine whether the defendant had possessed the pictures for the purpose of his own sexual stimulation). Accordingly, we hereby overrule *Rendleman* to the extent that it held that the "for purpose of sexual stimulation" prong of Section 30-6A-2(A)(5) (as opposed to the sixth *Dost* factor) must be evaluated pursuant to an objective standard.

**{33}** Applying the subjective standard to the circumstances of the present case, we conclude that the evidence amply supports the trial court's factual finding that the images were manufactured for the purpose of Defendant's own sexual stimulation. Aside from the graphic voyeuristic and fetishistic quality of the images themselves, *see supra* Part III.A, Defendant admitted that he intentionally had set up the hidden video camera and videotaped the unsuspecting female victims for the purpose of his own sexual stimulation. Additionally, the videotapes were found hidden in Defendant's office among commercial pornographic videotapes and magazines, thus reinforcing their sexual purpose. The Court of Appeals therefore improperly reversed the judgment of the district court and set aside Defendant's convictions.

**C.    Whether the evidence was sufficient to establish that the images are "obscene" as defined by Section 30-6A-2(E).**

**{34}** Defendant claims that the judgment of the Court of Appeals may be affirmed on the alternate basis that the images are not obscene as defined by Section 30-6A-2(E). At the outset, we note that Defendant does not claim that the images are protected by the First Amendment of the federal constitution or Article II, Section 17 of the New Mexico Constitution. Additionally, Defendant concedes that the images "lack[] serious literary, artistic, political or scientific value" under Section 30-6A-2(E)(3). Defendant claims only that the images do not violate the Act because they do not "appeal[] to a prurient interest in

sex, as determined by the average person applying contemporary community standards" and do not "portray[] a prohibited sexual act in a patently offensive way." Section 30-6A-2(E)(1)-(2). We disagree.

{35} Whether challenged material appeals to a "prurient interest in sex" or is "patently offensive" are essentially factual questions to be "determined by the average person applying contemporary community standards." Section 30-6A-2(E)(1)-(2); *see also Miller*, 413 U.S. at 30 (concluding that "what appeals to the 'prurient interest' or is 'patently offensive' . . . are essentially questions of fact"); *City of Farmington v. Fawcett*, 114 N.M. 537, 548, 843 P.2d 839, 850 (Ct. App. 1992) ("Obviously, the judge or jurors who live in the community are better able to determine what the community can tolerate."). "When triers of fact are asked to decide whether 'the average person, applying contemporary community standards' would consider certain materials 'prurient,'" they need not consider a uniform national standard, but, rather, are permitted "to draw on the standards of their community, guided always by limiting instructions on the law." *Miller*, 413 U.S. at 30.

> [T]he primary concern with requiring a jury to apply the standard of 'the average person, applying contemporary community standards' is to be certain that, so far as material is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person-or indeed a totally insensitive one.

*Id.* at 33.

{36} Defendant claims that, pursuant to *Rendleman*, the "New Mexico[] constitution requires application of the *Fawcett* obscenity standard to the Act." *Id.* ¶ 58. In *Fawcett*, the Court of Appeals determined that the "'contemporary community standard' provided by *Miller*" was inadequate to protect the free speech rights of New Mexico citizens under Article II, Section 17 of the New Mexico constitution. *Fawcett*, 114 N.M. at 545, 843 P.2d at 847. Specifically, the Court concluded that "[a]cceptance' is really the lowest common denominator, and may well limit dialogue on significant public issues beyond obscenity." *Id.* at 546, 843 P.2d at 848. Accordingly, "[r]ather than allowing the fact finder to determine that material is an abuse of the grant of free speech under Article II, Section 17, based on the 'acceptance' of the community," the Court concluded that the community must find the material to be *intolerable*. *Id.*

{37} Defendant claims that, pursuant to *Rendleman* and *Fawcett*, the images in the present case must be found to be intolerable "before they may be deemed as an 'abuse' of the right to freely speak, write, and publish sentiments on all subjects." *Id.* We need not decide whether Article II, Section 17 of the New Mexico Constitution mandates application of the community intolerance standard because, unlike the defendants in *Rendleman* and *Fawcett*, Defendant does not claim a violation of his free speech rights under the New Mexico Constitution. Rather, Defendant claims only that the images are not obscene as that term is defined by the Act. Because the plain language of the Act requires application of the

contemporary community standard, rather than the community intolerance standard, we conclude that the contemporary community standard is the appropriate standard by which to determine whether the challenged material is obscene. *See Rendleman*, 2003-NMCA-150, ¶ 52 (noting that Section 30-6A-2(E) adopts "the *Miller* criteria for obscenity").

**{38}**    Although the Act expressly incorporates the contemporary community standard delineated in *Miller*, the United States Supreme Court has held that the "States are entitled to greater leeway in the regulation of pornographic depictions of children," in relevant part because the States have a compelling interest "in safeguarding the physical and psychological well-being of a minor." *Ferber*, 458 U.S. at 756 (internal quotation marks and citation omitted).    Given the State's compelling interest, we are confident that the contemporary community standard will "self-adjust to take the interests of children into appropriate account.  What the community finds tolerable for adults will be a far cry from what it will tolerate when visual materials include children." *Rendleman*, 2003-NMCA-150, ¶ 61.

**{39}**    For this reason, although we agree with the Court of Appeals that the challenged material must do more than "'merely depict a naked child'" to run afoul of the contemporary community standard, we disagree that it "must be identifiable as hard-core child pornography." *Myers*, 2008-NMCA-047, ¶ 12; quoting *Rendleman*, 2003-NMCA-150, ¶ 44. The terminology "hard-core child pornography" is misleading because it denotes "[e]xtremely graphic or explicit" child pornography.  The American Heritage Dictionary at 799 (definition of "hard-core"). *All* child pornography, not just hard-core child pornography, is unacceptable and intolerable to New Mexico citizens and, therefore, obscene under the Act. *See Rendleman*, 2003-NMCA-150, ¶ 61 ("All right-thinking persons would agree that the 'sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people.'") (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002)).  Thus, child pornography is distinguishable from adult pornography, only a subset of which is obscene under the *Miller* standard.  Accordingly, to determine whether the challenged material is obscene, the question is not, "Is this *hard-core*-child pornography?"; rather, the question is, "Is this child pornography?"  The obscenity standard therefore defines what is, and what is not, child pornography under New Mexico law.

**{40}**    Our review of the record reveals that substantial evidence exists to support the trial court's factual finding that the images in the present case appeal to a prurient interest in sex and portray a prohibited sexual act in a patently offensive way.  As explained in parts III.A and B of this Opinion, the images depict a lewd and sexually explicit exhibition with a focus on the unclothed pubic area of the minor female victims for the purpose of Defendant's own sexual stimulation.  Given the graphic, deviant, and fetishistic quality of the images, we conclude that the trial court reasonably could have found, beyond a reasonable doubt, that the images are obscene as defined by Section 30-6A-2(E). *See State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 ("[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.") (internal quotation and citation marks

omitted). Accordingly, we reject Defendant's claim that the judgment of the Court of Appeals should be affirmed on this alternate basis.

**D.      Whether Defendant's convictions must be reversed because the indictment fails to specify which images provide the factual basis for each count.**

**{41}** Lastly, the State claims that the Court of Appeals improperly concluded that reversal of Defendant's convictions was warranted because "[i]t is impossible . . . to determine on this record which photographs were relied on to prove each count of the indictment." *Myers*, 2008-NMCA-047, ¶ 15. Specifically, the State claims that Defendant was not prejudiced by the alleged defect in the indictment because its Notice of Images, which was filed approximately three months prior to trial, notified Defendant of the images that provided the factual basis for each of the nine counts of sexual exploitation of children charged. We agree.

**{42}** Rule 5-204(A) NMRA provides in relevant part:

> A complaint, indictment or information shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected, because of any defect, error, omission, imperfection or repugnancy therein which does not prejudice the substantial rights of the defendant upon the merits.

*See also* Rule 5-204(D) ("No appeal, or motion made after verdict, based on any such defect, error, omission, repugnancy, imperfection, variance or failure to prove surplusage shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced in the defendant's defense on the merits."). The Committee commentary accompanying the Rule explains that "[t]his rule was designed to make clear that criminal pleadings should not be held invalid for any technical defect, error, or omission." Rule 5-204 Committee commentary.

**{43}** The purpose of a criminal information or indictment

> is to furnish the accused with such a description of the charge against him as will enable him to make a defense and to make his conviction or acquittal res judicata against a subsequent prosecution for the same offense, and to give the court reasonable information as to the nature and character of the crime charged.

*State v. Lott*, 73 N.M. 280, 284, 387 P.2d 855, 858 (1963). Thus, a variance between the crime charged and the offense for which the defendant is convicted "will not be deemed to be fatal unless the defendant could not reasonably have anticipated from the indictment what the nature of the proof against him would be." *State v. Ross*, 100 N.M. 48, 52, 665 P.2d 310, 314 (Ct. App. 1983). Additionally, "[t]he mere assertion of prejudice, without more, is

insufficient to establish prejudicial error warranting reversal of a conviction." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 (internal quotation marks and citation omitted).

**{44}** We conclude that the State's Notice of Images provided Defendant with sufficient notice of the images that provided the factual basis for each count of sexual exploitation of children with which he was charged. Because Defendant reasonably could anticipate the evidence to be produced against him, his ability to prepare his defense was not prejudiced. Accordingly, reversal of Defendant's convictions on this basis is not warranted.

**{45}** Defendant claims, however, that pursuant to *State v. Foster*, 87 N.M. 155, 530 P.2d 949 (Ct. App. 1974), his convictions must be reversed. In *Foster*, the defendant was charged, inter alia, with one count of sodomy in violation of NMSA 1953, Section 40A-9-6 (1972). The charging document failed to specify the precise date on which the alleged act of sodomy had occurred. *Foster*, 87 N.M. at 157, 530 P.2d at 951. At the defendant's trial, the evidence revealed that the victim had been sodomized by the defendant on three separate occasions, the third of which had been witnessed by the victim's guardian. *Id.* Because the defendant did not know with which of the three acts he had been charged, the Court of Appeals concluded that the defendant's ability to prepare his defense had been prejudiced, noting that

> [i]f it was the first or second act for which the defendant was tried, then [the victim's] guardian would not have been competent to testify with reference to it since it was only the third act he witnessed. In addition, evidence of the other acts may have been inadmissible under Rules of Evidence 404, § 20-4-404, N.M.S.A. 1953 (Repl. Vol. 4, 1970, Supp. 1973), if it was only the third act for which defendant was on trial. Defendant still does not know for which act he was convicted.

*Id.* at 157-58, 530 P.2d at 951-52.

**{46}** We conclude that *Foster* is distinguishable from the present case. Unlike the defendant in *Foster*, Defendant in the present case knew prior to trial what conduct provided the factual basis for each of the counts with which he was charged. Additionally, Defendant fails to specify, and we fail to perceive, how Defendant would have conducted his defense differently if the indictment, rather than the State's Notice of Images, had detailed this information. Accordingly, Defendant's reliance on *Foster* is misplaced
.

## IV. CONCLUSION

**{47}** We conclude that substantial evidence exists to support the trial court's factual findings that the images manufactured by Defendant depicted a "prohibited sexual act" as defined by Section 30-6A-2(A)(5), and are "obscene" as defined by Section 30-6A-2(E). We further conclude that Defendant had sufficient notice of the particular images that

provided the factual basis for each count of sexual exploitation of children with which he was charged. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to that Court with instruction to consider the parties' remaining claims, namely, whether the Act is void for vagueness as applied to Defendant's conduct and whether the trial court properly entered a stay of execution that relieved Defendant of the obligation to register as a sex offender pending the outcome of this appeal.

**{48} IT IS SO ORDERED.**

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

**EDWARD L. CHÁVEZ, Chief Justice**

**PATRICIO M. SERNA, Justice**

**RICHARD C. BOSSON, Justice**

**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Myers*, No. 30,993**

| | |
|---|---|
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-EL | Elements of Offense |
| CL-SE | Sexual Exploitation of Children |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |